# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| GLENN KIMBALL,<br><br> Petitioner,<br><br>vs.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br> Respondent. | Case No. 2:12-CV-00222-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Glenn Kimball's Petition for Review (Dkt. 1), filed May 9, 2012, seeking review of the Social Security Administration's final decision to deny his disability benefits.  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

On July 1, 2009, Glenn Kimball ("Petitioner") applied for disability insurance benefits, alleging a disability onset date of October 12, 2006, when he was 44 years old. Petitioner's claim was initially denied on September 29, 2009 and, again, denied on reconsideration on January 14, 2010.  (AR 19).  On February 8, 2010, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  (AR 19).  On September 9, 2010, ALJ Marie Palachuk held a hearing in Spokane, Washington, at

**MEMORANDUM DECISION AND ORDER - 1**

which time Petitioner, represented by attorney Louis Garbrecht, appeared and testified. (AR 19).  A medical expert, Richard A. Hutson, M.D., and an impartial vocational expert, Thomas A. Polsin, also appeared and testified.

At the time of the hearing, Petitioner had past relevant work as a construction supervisor, carpenter, siding applicator, and construction superintendent.  (AR32). Petitioner last attended school in the twelfth grade.  (AR 32).

On October 1, 2010, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 33).  Petitioner timely requested review from the Appeals Council on November 22, 2010 (*see* Petitioner's Brief, p. 2, Dkt. 16) rendering the ALJ's decision the Commissioner's final decision.  Petitioner now seeks judicial review of the Commissioner's decision to deny benefits.

Petitioner contends the ALJ erred by: (1) failing to properly evaluate the Petitioner's fractures in combination with his allegations of a weak right arm, weak right grip, limitation on reaching at shoulder level, as well as the inability to move his neck, (2) giving significant weight to a non-examining medical advisor and an independent medical opinion and not enough weight to the opinions of treating physician Roger Dunteman, M.D., (3) discounting Petitioner's testimony, and (4) giving undue weight to the vocational expert's testimony.

**MEMORANDUM DECISION AND ORDER - 2**

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving

**MEMORANDUM DECISION AND ORDER - 3**

conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

**MEMORANDUM DECISION AND ORDER - 4**

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner had not engaged in SGA since October 12, 2006, the alleged onset date.  (AR 21).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.  If the

**MEMORANDUM DECISION AND ORDER - 5**

claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: lumbar spondylolisthesis status post fusion L5-S1; degenerative disk disease cervical spine status post fusion; and status post two surgeries right shoulder.  (AR 21).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 22).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last

**MEMORANDUM DECISION AND ORDER - 6**

15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner is able to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except he would need a stand/sit option and, although he could occasionally reach above the shoulder with his left upper extremity, he can never lift above the shoulder with his right upper extremity.  (AR 22).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled.  Here, the ALJ considered Petitioner's age, education, work experience, and residual functional capacity and determined that jobs exist in significant numbers in the national economy that Petitioner can perform.  (AR 32).

**MEMORANDUM DECISION AND ORDER - 7**

**B.     Analysis**

1.     <u>Credibility</u>

Petitioner takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of his symptoms is not credible "to the extent they are inconsistent with the . . . residual functional capacity assessment." AR 23; *see also* Pet.'s Brief, p. 9-10 (Dkt. 16).   It is well established that the ALJ is in the best position to make credibility determinations and, for this reason, her determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider a claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *Light v. Social Security Admin*., 119 F.3d 789, 791 (9th Cir. 1997).  In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  Nonetheless, that discretion is not without limits.  In pertinent part here, before rejecting a claimant's testimony the ALJ must make specific findings stating clear and convincing reasons for doing so.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir, 2001) (citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)).  Here, the ALJ provided some reasons for calling into question Petitioner's credibility that can be upheld, but other reasons do not pass muster and must be re-evaluated on remand, for the reasons explained below.

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ appropriately relied on Petitioner's own report of his daily functions, in which he said he is able to lift 15 pounds and participate in activities that the ALJ found demonstrated he can perform "a full complement of activities of daily living."  AR 23, 30; *see also* AR 210-15.  Petitioner's function report from July of 2009 states that he sometimes cooks, does small household repairs, and waters the lawn.  AR 210-15.  He estimates these tasks take up to one and one-half hours per day.  He also shops for groceries about two times a week for a half hour each time.  AR 213.  He likes to hunt, fish, engage in some sports, and barbeque, but only occasionally does so.  AR 214.  He also takes care of two grandchildren until 6 p.m. each day, Monday through Friday, and "play[s] games," although his wife helps watch the grandchildren.  AR 210-11.  The ALJ mentioned these activities in making her credibility determination.  AR 30-31.

Petitioner takes issue particularly with the ALJ's reliance on Petitioner watching his grandchildren when she did not state their age or Petitioner's care activities.  Reply, p. 2 (Dkt. 18).  Petitioner's function report noted, however, that he "play[s] games", providing some indication of the type of care involved in watching his grandchildren. Moreover, there were a host of other daily activities that the ALJ relied on in making her assessment.  Even where an individual's "activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

**MEMORANDUM DECISION AND ORDER - 9**

Also, as the ALJ recognized, during the alleged disability period various of the examining and treating physicians determined that Petitioner could perform some types of work. *See* AR 355 (April 2007 released "for light-duty" to lift up to 25 pounds); AR 638 ("strength loss and poor range of motion . . . probably preclude him to undergoing further heavy labor positions") (emphasis added); AR 789 (Petitioner is "fixed and stable with permanent restrictions of no repetitive activity at or above shoulder level and no lifting greater than 10 lbs.").

Although the ALJ appropriately considered Petitioner's daily activities and function report when assessing his credibility, she also relied on the medical record and stated that no treating doctor had given permanent limitations more restrictive than those in her residual functional capacity ("RFC").  AR 23.  However, as discussed in detail below, the Court is remanding for the ALJ to reconsider the medical evidence, particularly with regard to treating physician Roger Dunteman's opinion that Petitioner is restricted in his ability to reach *at* shoulder level – a permanent limitation more restricted than the ALJ's RFC, which restricted Petitioner to occasionally reaching *above* shoulder level.

Additionally, the ALJ based her credibility determination, in part, on her finding that "no treating or examining doctor has given any sit, stand, or walking limitations." AR 23.  That finding appears to be based upon a faulty premise, as both David Bauer, an orthopedic surgeon, and David Rutberg, a neurosurgeon, opined that Petitioner is unable to stand or sit for greater than 30 minutes.  AR 784.  Although they limited this

**MEMORANDUM DECISION AND ORDER - 10**

observation to his status as of March 19, 2010 (a time when Petitioner's treating physician found his condition fixed and permanent), they also said that "it appears that those restrictions will be permanent". AR 784; *see also* AR 789 (Dr. Roger Dunteman opines on February 26, 2010 that Petitioner's condition is fixed and permanent). For these reasons, and because the Court is remanding for reconsideration of the medical opinion testimony and resulting residual functional capacity assessment, the ALJ on remand should reevaluate her credibility determination as well.

2.    Evaluation of Medical Opinions & RFC Assessment

Petitioner argues that the ALJ erred by giving significant weight to a non-examining medical advisor (presumably Dr. Richard Hutson) and "an IME opinion dated three years *before [Petitioner] was medically stable*" (presumably Dr. Sears' December 7, 2007 report). Pet.'s Br., p. 8 (Dkt. 16) (emphasis added); *see also* AR 31 (ALJ's discussion). However, there is record support for finding that Petitioner's condition was fixed and stable before March of 2010. *See, e.g.*, AR 367 (as of December 2007, Dr. Sears opines that Petitioner is "fixed and stable . . . at maximum medical improvement"); AR 778 (Petitioner "is fixed and stable with a date of impairment of November 19, 2009"); AR 785 (October 12, 2006 letter from the State Insurance Fund explaining that panel doctors found Petitioner "to be at maximum medical improvement relative to his industrial injury claim of October 12, 2006. They feel no further treatment is reasonable or necessary. They have imposed on him permanent restrictions of no lifting greater than

**MEMORANDUM DECISION AND ORDER - 11**

10 pounds with the right upper extremity as well as the inability to sit or stand for longer than a 30-minute time period.").

Moreover, these opinions as to Petitioner's "fixed and stable" status were from a time during the claimed disability period (which began on October 12, 2006) and, therefore, are relevant to the ALJ's decision.  An opinion from the early part of the disability period is not, simply by virtue of an earlier date, presumptively less reliable or useful for the disability determination.  Significantly, the ALJ also relied on a lengthy independent medical exam performed by Drs. Bauer and Rutberg in March of 2010, at a time Petitioner submits he was medically stable.  AR 31.

Petitioner next argues that the ALJ improperly rejected the opinion of Dr. Roger Dunteman, Petitioner's shoulder surgeon, who found that Petitioner was not able to perform work at or above shoulder level.  Respondent asserts that "no treating or examining doctor has given permanent limitations that were more restrictive than those found by the ALJ in the residual functional capacity assessment."  Resp.'s Br., p. 5 (Dkt. 17).  However, the ALJ found that Petitioner can never lift *above* the shoulder with the right upper extremity, while Dr. Dunteman (a treating physician) opined on February 26, 2010 that Petitioner was "fixed and stable with permanent restrictions of no repetitive activity *at or above* shoulder level and no lifting greater than 10 lbs."  AR 789 (emphasis added).

Opinions of treating physicians are entitled to greater weight than the opinion of a non-examining physician.  *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

**MEMORANDUM DECISION AND ORDER - 12**

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  Such deference comes from the fact that the treating physician is "employed to cure and has a greater opportunity to know and observe the individual."  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).  Even so, a treating physician's opinion is not necessarily conclusive.  *See id.* at 762.  However, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *See Pitzer*, 908 F.2d at 506.  If the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

Here, the ALJ did not *reject* Dr. Dunteman's opinion that Petitioner could not engage in repetitive activity at or above shoulder level, but she appears to have overlooked it or improperly left it behind, as well as other testimony supporting that limitation, when she made her RFC assessment.  For instance, the ALJ favorably considered testimony from Dr. Richard Huston, an orthopedic surgeon who testified at the hearing, and relied upon his initial opinion that Petitioner would not be able to do any overhead lifting with the elbow "above shoulder level on the right side."  However, Dr. Huston, upon questioning by Petitioner's counsel, agreed that Petitioner should have no repetitive activity with his right dominant arm *at* or above shoulder level.  *Compare* AR 48 &50.  The ALJ mistakenly summarized Dr. Huston's opinion as limiting Petitioner to "sedentary work with no overhead lifting with the elbow over the shoulder level on the right side and no repetitive arm movements at or above shoulder level" (AR 31), and then

**MEMORANDUM DECISION AND ORDER - 13**

incorporated "most" of Dr. Huston's limitations in her RFC, ultimately finding that Dr. Huston's "limitations are consistent with the evidence".  AR 31.  Her RFC thus incorporated only the limitation on over the shoulder reaching.  AR 22.  Accordingly, the ALJ's statement that no treating doctor had given permanent limitations more restrictive than those in her RFC is not entirely accurate.  AR 23.

Although one might contend that such a distinction is not significant, its import is more significant than might first meet the eye.  "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s)[,] is expected to be relatively rare," and "[u]nskilled sedentary work also involves other activities, classified as 'nonexertional,' such as capacities for . . . manipulation . . . ."  Social Security Ruling 96-9p, 1996 WL 374185, *1-3.  Thus, the ALJ limiting Petitioner to unskilled sedentary work with several restrictions involves a significant limitation and Petitioner's capacity for manipulation and use of his arms *at* shoulder level could have a significant impact on the jobs available to him in the economy.  Had the ALJ discussed why she did not include a limitation at the shoulder reaching, as assessed by treating physician Roger Dunteman and agreed to by consulting physician Richard Hutson, there may have been sufficient support for her treatment of that limitation in the record.[1]  Instead, even though she acknowledged the limitation, it

---

[1]  For example, on September 29, 2009, reviewing physician Thomas Coolidge determined that Petitioner could not reach *over* 90 degrees "due to shoulder and cervical spine". AR 743.  Lloyd Schneiderman, DO, another reviewing physician, reviewed Dr. Coolidge's residual functional capacity assessment on January 14, 2010, and "affirmed" it "as written".  AR 761.  Examining physician Stephen Sears, on February 19, 2008, found Petitioner was

**MEMORANDUM DECISION AND ORDER - 14**

was omitted from her RFC.  Further, even though Dr. Stephen Sears, an examining physician, only limited Petitioner in his ability to use his right hand "overhead" (AR 372), that opinion  does not contradict Dr. Dunteman's further conclusion that Petitioner cannot engage in repetitive reaching at shoulder level, an opinion with which Dr. Hutson agreed. The ALJ gave significant weight to the opinions of both Dr. Hutson and Dr. Sears.

Accordingly, the Court determines remand is appropriate to allow the ALJ to resolve which physician opinion, or opinions, she credited in determining the limitations on the sedentary work that Petitioner has the residual functional capacity to do, and why she rejected a limitation of at the shoulder repetitive movement in assessing an RFC.  At the same time, the ALJ can address whether Petitioner's right grip and any inability to move his neck might further impact his manipulative limitations for unskilled sedentary work.

---

permanently restricted to "only occasional use of right hand overhead."  AR 372.

**MEMORANDUM DECISION AND ORDER - 15**

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

In this record, however, the ALJ did not provide sufficient support for her determination that Petitioner's only limitation on use of his right shoulder relates to overhead movement, which disregards the testimony of physicians who found that he is limited in repetitive movements at shoulder level, a potentially significant manipulative limitation for unskilled sedentary work.  This treatment of the medical evidence, in turn, impacted the ALJ's credibility assessment.  For these reasons, this matter is remanded for further consideration by the ALJ.  Because the Court is remanding for reconsideration of the medical opinion and residual functional capacity assessment, it is unnecessary to address Petitioner's argument as to the propriety of the ALJ's reliance on the vocational expert at this time.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The

Commissioner's decision that Petitioner's subjective complaints are not credible is not

sufficiently clear and convincing; therefore, this matter is remanded pursuant to sentence

four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum

Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **September 30, 2013**.

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge